**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

|  |  |
|---|---|
| In re: | Chapter 13 |
|  | Case No. 09-44865-HJB |
| ALLAN G. CORMIER, |  |
| DEBORAH A. CORMIER, |  |
|  |  |
| Debtors |  |

**MEMORANDUM OF DECISION**

The issues presented in this Chapter 13 case raise important questions regarding the interplay between the rights of mortgage holders and those of financially-strapped property owners seeking relief under the Bankruptcy Code. At a time when the soaring foreclosure rate has left a backlog of bank-owned properties, and both owners and banks often choose to simply walk away – leaving abandoned homes and buildings to blight and burden their neighborhoods, cities, and towns – the inadequacy of existing state and federal laws to provide meaningful, responsible solutions becomes distressingly obvious. Yet, judges are interpreters and not architects of the law.

I.    FACTS AND TRAVEL OF THE CASE

On November 13, 2009, Allan and Deborah Cormier (the "Debtors") filed a petition for relief under Chapter 13 of the United States Bankruptcy Code (the "Bankruptcy Code"

or the "Code").[1] In the required financial schedules and statements filed with the case (the "Schedules"), the Debtors disclosed ownership interests in two pieces of real property: their residence and a three-family house located in Fitchburg, Massachusetts (the "Property"). On Schedule A – Real Property, the Debtors listed the current market value of the Property as $75,000, and subject to a secured claim in the amount of $94,747.58. On Schedule D, the Debtors listed American Home Mortgage Service, Inc. ("American") as the holder of the relevant mortgage.

On Schedule I – Current Income of Individual Debtor(s), the Debtors reported the sum of $5,681.32 as their monthly income net of taxes, insurance, and other deductions. On Schedule J – Current Expenditures of Individual Debtor(s), the Debtors listed their average monthly expenses as $5,263.70, and thereby calculated a monthly surplus of $417.62.[2]

On November 19, 2009, the Debtors filed and served their Chapter 13 plan (the "Plan"). Under Section C of the Plan – "Modification of Secured Claims" – the Debtors propose to surrender American's collateral (the Property) "in full satisfaction of debt." The Debtors' Plan also provides an 8.785% dividend on unsecured claims and calculates the monthly Plan payments at $418.

On February 3, 2010, American filed a motion requesting relief from the automatic stay imposed by § 362(a) (the "Motion for Relief"), and indicating the Debtors' assent

---

[1] Unless otherwise stated, all statutory and section references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

[2] The Debtors are below-median debtors – i.e., their annualized income falls below the median for households of the same size in Massachusetts.

2

thereto. According to the Motion for Relief, the pre-petition arrearage on American's secured claim totaled $5,606.94, and the Debtors had made no post-petition payments. American seeks relief from the automatic stay so that it may "exercis[e] its various non-bankruptcy rights and remedies including and without limitation: i. taking possession of the Property, obtaining a deed-in-lieu of foreclosure and/or foreclosing the Mortgage at issue; and ii. taking such action as may be necessary to evict the Debtor(s) and/or any occupant from the Property."

On February 12, 2010, before the Court could act on the Motion for Relief,[3] the Debtors filed a "Motion to Require American Home Mortgage Servicing, Inc. to Acknowledge the Debtor's Surrender of the Property [ ] and to Allow an Administrative Claim for the Debtors' Post-Petition Expenses for Insuring and Preserving that Property" (the "Debtors' Motion"). Through their Motion, the Debtors seek an order "(a) directing [American] to acknowledge that the Debtors have surrendered their interest in [the Property], and (b) allowing them to deduct from their plan payments, on account of administrative expenses, the actual amounts they are incurring to insure and preserve that property." In their memorandum in support of the Motion (the "Debtors' Brief"), the Debtors clarify that they want American to "formally acknowledge the surrender of the property so they can reasonably stop paying to insure and preserve it."

Neither American nor the Chapter 13 trustee (the "Trustee") have filed objections to the Debtors' Plan (which remains unconfirmed). However, on April 14, 2010, the Court held a hearing on the Debtors' Motion and the Motion for Relief (the "Hearing") and took both

---

[3] See Mass. Local Bankr. R. 4001-1(c) (providing 14 days for parties to file objections to motions for relief from the automatic stay).

3

matters under advisement.

II.    POSITIONS OF THE PARTIES

    A.    **Debtors**

In their Brief, the Debtors say that, since September 2009, they "have spent $105.29 on utility expenses for the [Property]," "have incurred $218.79 in unpaid charges," and have "maintained in force property and liability insurance" on the Property. The Debtors further state that there is one tenant residing the property who has not paid the $700 rent since September 2009. In the Debtors' Brief and at the Hearing, counsel for the Debtors argued that the Debtors have committed all of their net income after expenses to the Plan and have experienced unexpected car repair and dental expenses that have consumed all of their other discretionary income. As such, the Debtors maintain that they can no longer afford to insure and preserve the Property, nor can they afford to file or prosecute a summary process action to evict the non-paying tenant.

The Debtors want American to take responsibility for the Property's expenses so they can devote all of their disposable income toward the Plan. In support of their argument that American can be held responsible for expenses associated with the Property, the Debtors rely on the fact that Massachusetts adheres to a "title theory" of mortgages. Because, under Massachusetts law, a mortgage conveys title to the mortgagee, the Debtors argue that American has accepted a conveyance of the Property. And since the Debtors have essentially abandoned the Property and are ceding possession to American, then American, as mortgagee, should have the duty to maintain it. The Debtors attempt to factually distinguish this case from <u>Negron v. Gordon</u>, 366 N.E.2d 241

4

(Mass. 1977), where the Massachusetts Supreme Judicial Court (the "SJC") held that a mortgagor, although financially unable to remedy sanitary code violations at the mortgaged property, was nonetheless legally responsible for the violations.  The Debtors argue that the mortgagee was not held responsible in that case because, unlike here, the mortgagor had not taken action to surrender the property to the mortgagee.[4]

But the Debtors further contend that, to the extent Massachusetts law requires the mortgagee's consent before it can be compelled to take possession and responsibility of surrendered property, that requirement is preempted by § 1325(a)(5)(C) of the Bankruptcy Code.  The Debtors argue that § 1325(a)(5)(C) allows debtors to surrender collateral to a secured creditor in satisfaction of a creditor's secured claim, and this ability to surrender cannot be thwarted by conflicting state law.  Requiring the assent of a creditor in order to accomplish surrender under § 1325(a)(5)(C) would, according to the Debtors, "frustrate[ ] a federal purpose and impermissibly act[ ] within an exclusively federal field."  Because a surrender of the Property to American is an integral part of the Debtors' Plan, the Debtors say that their ability to unilaterally surrender the Property is essential to their right to relief under Chapter 13.

Finally, the Debtors seek reimbursement of the expenses they have incurred in insuring and preserving the Property.  The Debtors equate these expenses to administrative claims, as the expenditures were actual, necessary costs and expenses of

---

[4] At the Hearing, Debtors' counsel noted that the SJC has recently granted review in a case where Massachusetts' adherence to the title theory of mortgages is outcome-determinative.  See Faneuil Investors Group v. Bd. of Selectmen of Dennis, 913 N.E.2d 908 (Mass. App. Ct. 2009), review granted, 920 N.E.2d 73 (Mass. Dec. 22, 2009).  Debtors' counsel postulated that the SJC may direct the Massachusetts law of mortgages toward a lien theory instead, leaving the issues here "sufficiently murky" to warrant certification to the SJC.

preserving the estate, which claims may be asserted by the Debtors as "entities" under § 503(b)(1)(A). To effectuate the reimbursement, the Debtors propose to deduct the expenses from their Plan payments after submitting proof of the payments to the Trustee.

### B.    American Home Mortgage Servicing, Inc.

American objects to the Debtors' Motion as an attempt by the Debtors to "impose a duty upon [American] for insuring and maintaining the Property," to "ignore their duties as owners of the Property," and "to shirk their responsibilities onto [American] because they can no longer an afford an investment property." American also claims that the Debtors are seeking a "windfall" by having American shoulder the burden of evicting any tenants and paying for insurance and maintenance. In fact, argues American, the Debtor's Motion is unnecessary because American *does* accept the Debtors' proposed surrender of the Property through the Plan, although it objects to being compelled to take immediate possession of the Property.

According to American, the fact that Massachusetts is a title theory state is immaterial, since Massachusetts courts have routinely held that a mortgagor is regarded as the "owner" of a property so long as the mortgagor remains in possession. Here, American says, the Debtors remain the owners under Massachusetts law and American cannot be compelled to take possession and assume responsibility for maintaining and preserving the Property.

When asked at the Hearing whether the Debtors' proffer of a deed-in-lieu of foreclosure would resolve the issues here, counsel to American balked at the idea. American insists that it is entitled, upon an order lifting the automatic stay, to pursue its rights under the mortgage and state law at its discretion. American has not indicated a

present refusal to take possession or conduct a foreclosure sale; rather, it maintains that it cannot be *compelled* to do so.[5]

### C.  Chapter 13 Trustee

The Trustee objects to the Debtors' request to deduct the claimed "administrative" expenses from Plan payments. Noting that the Debtors' Schedule J budgeted $300 per month for discretionary expenses, the Trustee says the approximately $65 per month the Debtors allegedly spent maintaining the Property should be paid from their discretionary funds. At the Hearing, the Trustee further argued that the expenses do not qualify as administrative expenses necessary to preserve the bankruptcy estate, since the Debtors are surrendering the Property under the Plan.

## III.  DISCUSSION

### A.  Massachusetts Law

The Debtors are correct in their characterization of Massachusetts as a "title theory" state under the common law regarding mortgages[6]; Massachusetts courts have

---

[5] While not providing a clear answer for why a foreclosure sale, rather than acceptance of a deed-in-lieu, was preferable, American implied that the reason was related to the presence of tenants on the property and the liability which it might assume by taking possession of the Property prior to foreclosure.

[6] In states, such as Massachusetts, that adhere to the title theory, "legal 'title' to the mortgaged real estate remains in the mortgagee until the mortgage is satisfied or foreclosed." Faneuil, 913 N.E.2d at 912 n.5 (quoting Restatement (Third) of Property (Mortgages) § 4.1, cmt. a (1997)). In contrast, "in lien theory jurisdictions, the mortgagee is regarded as owning a security interest only and both legal and equitable title remain in the mortgagor until foreclosure." Id. And under an "intermediate theory," "legal and equitable title remain in the mortgagor until a default, at which time legal title passes to the mortgagee." Id. The practical effect of these distinctions "is that under the [title theory] the mortgagee may enter into possession of the mortgaged premises upon default and before foreclosure, whereas under the 'lien theory' there is no right of possession; the mortgagee must await sale of the mortgaged property and obtains satisfaction of the mortgagor's debt from the proceeds of sale. The right of possession gives the mortgagee under a 'title theory'

7

consistently held that, under Massachusetts law, the granting of a mortgage on property conveys title to the mortgagee.[7] But this characterization alone does not compel the conclusion urged by the Debtors, namely, that as holder of "title" to the Property, American is now responsible for the incidents of ownership of the Property, financially or otherwise. Despite Massachusetts' adherence to the title theory, Massachusetts courts have been equally as consistent in holding that a mortgagor, and not the mortgagee, bears the responsibilities and holds the rights incident to ownership until the mortgagee obtains possession or forecloses. As the SJC explained in Chamberlain v. James:

> Doubtless a mortgagee, even before breach of the condition of the mortgage, though not in possession of the mortgaged real estate and not entitled to possession thereof by the terms of the mortgage, is regarded for some purposes as the owner of the real estate and can maintain an action based on his title against the mortgagor or a stranger for injury to his interest in the property as security. A mortgagor, however, "unless otherwise stated in the mortgage" until "default in the performance or observance of the condition of a mortgage'" is entitled to "hold and enjoy the mortgaged premises and receive the rents and profits thereof." G.L. (Ter. Ed.) c. 183, § 26. The mortgagee upon such default is entitled to immediate possession merely in the sense that upon breach of condition he is entitled to recover possession of the mortgaged premises by an open and peaceable entry on such premises or by action, or, if the mortgage contains a power of sale, to foreclose by sale. . . .
>
> And so long as the mortgagor was suffered to remain in possession, though the condition of the mortgage had been broken, such mortgagor, and not the mortgagees, had the rights of control and management of the mortgaged property incident to possession thereof, not only as to all the world other than the mortgagees, but also as to the mortgagees.

---

regime slightly better control of foreclosure proceedings." Maglione v. BancBoston Mortgage Corp., 557 N.E.2d 756, 758 (Mass. App. Ct. 1990) (citations omitted).

[7] See, e.g., Charlestown Five Cents Sav. Bank v. White, 30 F. Supp. 416, 418 (D. Mass. 1939); In re Derosches, 314 B.R. 19, 22 (Bankr. D. Mass. 2004); Negron, 366 N.E.2d at 244; Harlow Realty Co. v. Cotter, 187 N.E. 118, 119 (Mass. 1933); Faneuil, 913 N.E.2d at 912-13.

200 N.E. 361, 365 (Mass. 1936) (citations omitted).

The same was reiterated by the SJC forty years later in Negron v. Gordon, 366 N.E.2d 241 (Mass. 1977). In Negron, tenants of a property brought suit against the landlord and the bank holding a mortgage on the property, alleging sanitary code violations. The SJC affirmed the dismissal of the action as to the bank, even though it was clear that the landlord was financially unable to correct the code violations. The SJC, citing nearly century-old Massachusetts law, stated: "so long as it remains in possession, the mortgagor is regarded as the real owner, and it retains all incidents of ownership, not only as to all the world but as to the mortgagee as well." Id. at 245 (citing Way v. Mullett, 143 Mass. 49 (1886)).[8] Because the bank had not obtained possession and had not foreclosed, only the landlord could be held liable for the code violations. Id.

And, despite the fact the landlord may have breached the terms of the mortgage, giving the bank the *right* to enter into possession or foreclose, the bank was not obliged to do so.[9] The holding of Negron did not, as the Debtors maintain, turn on the fact that the landlord had not offered to surrender the property to the bank. Even if the landlord had so

---

[8] See also Charlestown Five, 30 F. Supp. at 418 (although a mortgage conveys a fee, this is for the purpose of securing the debt and "leave[s] to the mortgagor . . . the full control, disposition and ownership of the estate."); Vee Jay Realty Trust Co. v. DiCroce, 277 N.E. 2d 690, 692 (Mass. 1972) ("as to all the world except the mortgagee, a mortgagor is the owner of the mortgaged lands, at least until the mortgagee has entered for possession") (quoting Dolliver v. St. Joseph Fire & Marine Ins. Co., 128 Mass. 315, 316, 1880 WL 10671 (Mass. 1880)); Chamberlain, 200 N.E. at 365; Santiago v. Alba Mgmt., Inc., 928 N.E.2d 359, 362 (Mass. App. Ct. 2010).

[9] Id. at 244 ("The mortgagee is not bound to act when the mortgagor violates the statutory condition. . . . Neither the breach of the statutory condition nor a lapse of time subsequent thereto alters the rights of the parties in relation to the property."); see also Framingham Sav. Bank v. MacDonald, 1994 WL 902913, *4 (Mass. Super. Oct. 31, 1994) ("[T]he Bank's duty to its mortgagors does not require the Bank to accept a deed in lieu of foreclosure.") (citing Lexington Trust Co. v. McCabe, 49 N.E.2d 435 (Mass. 1943)), aff'd 661 N.E.2d 129 (Mass. App. Ct. 1996).

offered, the bank had the right to refuse. Rather, the mere fact that the bank did not have possession, whatever the reason, was dispositive. Id. at 245 & n.6.

Similarly, here, the Court cannot conclude that American has possessory rights or obligations regarding the Property by virtue of its "bare legal title." And there is no basis in Massachusetts law for the Court to compel American to take possession.[10] Therefore, the Court cannot find that, under Massachusetts law, American presently has, or can be compelled to incur, liability for the Property's maintenance or preservation expenses.[11]

### B.    Surrender under § 1325(a)(5)(C)

Section 1325(a)(5) provides debtors with three options for the treatment of secured claims under a Chapter 13 plan. Subsection (A) allows confirmation if "the holder of such claim has accepted the plan" and, absent such acceptance, subsection (C) allows confirmation if the plan provides for surrender of the collateral to the secured creditor. 11 U.S.C. § 1325(a)(5)(C).[12] Here, the Debtors have opted to proceed under subsection (C)

---

[10] Because the Court finds that Massachusetts law is not "murky" on this issue, it declines the Debtors' suggestion to certify the issue to the SJC. Furthermore, to the extent the SJC has granted review in Faneuil, 913 N.E.2d 908, the Court sees no consequence to the outcome of this case even if the SJC were to change course and adopt a "lien theory" of mortgages. As the Debtors' counsel readily admitted at the Hearing, "under the lien theory of mortgages, . . . [the Debtors'] state law theory is very weak . . . ." April 14, 2010 Hr'g Transcript 8:7-8.

[11] This does not mean that American is *prohibited* from bearing the costs of maintaining the Property. Given the Debtors' obvious financial difficulties and their desire to extricate themselves from any relationship with the Property, American may be better served by acting to preserve the Property's likely eroding value.

[12] Specifically, the Code provides:

(a) [T]he court shall confirm a plan if –

   . . .

   (5) with respect to each allowed secured claim provided for by the plan –

      (C) the debtor surrenders the property securing such claim to such

in providing for American's claim in their Plan.

Although the Plan has not yet been confirmed, the Debtors ask the Court to compel American to "acknowledge" the proposed surrender of the Property. American, in turn, says it readily accepts the proposed surrender. What the Debtors want, it appears, is not merely American's "acknowledgment" of the Debtors' surrender; rather, they want the Court to compel American to either take a deed-in-lieu of foreclosure, to take immediate possession of the Property, or to affirm that it will promptly foreclose on the Property. The Debtors say that, to the extent Massachusetts law does not provide a basis for this relief, § 1325(a)(5)(C) of the Bankruptcy Code preempts state law. Thus, the Court should compel American to "accept" the Debtors' surrender of the Property in order to allow effective relief under Chapter 13.

"Surrender" is not defined in the Bankruptcy Code, and many of the cases discussing the concept of surrender under the Code focus on what a *debtor* can or must do to effectively surrender property. Although the Bankruptcy Code leaves the term undefined, the First Circuit Court of Appeals provided direction in In re Pratt, where, in discussing surrender under § 521(a)(2)(A),[13] the Court held that "'surrender' does not necessarily contemplate that the debtor physically transfer the collateral to the secured creditor. Thus, the most sensible connotation of 'surrender' [where the collateral is not

---

holder . . . .

11 U.S.C. § 1325(a)(5)(C).

[13] In a Chapter 7 case where the "debtor's schedule of assets and liabilities includes debts which are secured by property of the estate . . . the debtor shall file . . . a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property." 11 U.S.C. § 521(a)(2)(A).

actually delivered] is that the debtor agreed to make the collateral *available* to the secured creditor – *viz*. to cede his possessory rights in the collateral." 462 F.3d 14, 18-19 (1st Cir. 2006) (emphasis in original) (citing In re Cornejo, 342 B.R. 834, 836-37 (Bankr. M.D. Fla. 2005)).

This understanding of surrender under § 521(a)(2) informs the Court's understanding of the term's meaning in the Chapter 13 context, U.S. v. Lachman, 387 F.3d 42, 55 (1st Cir. 2004) ("generally, '[t]he normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning") (quoting Sorenson v. Sec'y of the Treasury, 475 U.S. 851, 860 (1986)), and is consistent with case law from other jurisdictions involving the meaning of surrender under § 1325(a)(5)(C). Courts have consistently agreed that, generally speaking, when a debtor surrenders property under § 1325(a)(5)(C), the debtor relinquishes his or her rights to the collateral in favor of the creditor.[14] What is less settled, however, is the extent to which a creditor is obliged to actually take possession of or title to surrendered property.

Some courts have gone so far as to state that a debtor cannot surrender property without the secured creditor's assent. In In re Service, 155 B.R. 512 (Bankr. E.D. Mo. 1993), the Chapter 13 debtors elected to surrender real property to a secured creditor in satisfaction of its claim pursuant to § 1325(a)(5)(C) and assented to the court lifting the

---

[14] See, e.g., White v. Logan (In re White), 487 F.3d 199, 205 (4th Cir. 2007); In re Cope, 2010 WL 376380, *6 (Bankr. E.D. Pa. Jan. 26, 2010); Gelibert v. United States (In re Gelibert), 2010 WL 2026520, *1 (Bankr. N.D. Ga. March 1, 2010); In re Carter, 390 B.R. 648, 652 (Bankr. W.D. Mo. 2008); In re White, 282 B.R. 418, 421-22 (Bankr. N.D. Ohio 2002); In re Anderson, 316 B.R. 321, 323 (Bankr. W.D. Ark. 2004); Providian Nat'l Bank v. Vitt (In re Vitt), 250 B.R. 711, 719 (Bankr. D. Colo. 2000); In re Stone, 166 B.R. 621, 623 (Bankr. S.D. Tex. 1993); accord In re Gray-Bailey, 427 B.R. 536, 539-40 (Bankr. D. Idaho 2010) (discussing surrender in context of Chapter 12 plan); In re Kiklis, 352 B.R. 355, 359 (Bankr. D. Mass. 2006) (discussing surrender in context of Chapter 11 plan).

automatic stay in order to allow the creditor to proceed with foreclosure. Id. at 513. The creditor did not object to the proposed surrender and the plan was confirmed. Id. Thereafter, the debtors filed a motion asking the bankruptcy court to compel the creditor to accept the surrender and foreclose on the property, arguing that the creditor had failed to do so in violation § 1325(a)(5)(C), leaving the debtors at risk for liabilities associated with the property. Id. at 513-14. The Bankruptcy Court for the Eastern District of Missouri, relying in part on In re Robertson, 72 B.R. 2, 4 (Bankr. D. Colo. 1985), held that surrender was a "contractual" act and required the "consent of both parties." Service, 155 B.R. at 514. Although the debtors could provide for satisfaction of the claim by offering to surrender the property, the debtors "could not compel [the] creditor to accept surrender [or] enforce its rights and take title to the realty." Id. Instead, the surrender and relief from stay left the creditor "free to exercise its remedies under the note and deed of trust," but the choice "[w]hether to proceed with its remedies [was] within the sole discretion of [the creditor]." Id. Relying on the language in Service and similar cases, several courts have agreed and have stated that a debtor cannot surrender property absent a creditor's assent.[15]

Other courts, however, have rejected the notion that a creditor must assent to a debtor's intent or plan to surrender property under the Bankruptcy Code. For example, in In re White, 282 B.R. 418 (Bankr. N.D. Ohio 2002), the Bankruptcy Court for the Northern

---

[15] See, e.g., Losak v. Beneficial Consumer Disc. Co. (In re Losak), 375 B.R. 162, 164 (Bankr. W.D. Pa. 2007) (quoting Phillips v. City of South Bend (In re Phillips), 368 B.R. 733, 742-44 (Bankr. N.D. Ind. 2007); In re Koeller, 170 B.R. 1019, 1023 (Bankr. W.D. Mo. 1994); Service, 155 B.R. at 514); Phillips, 368 B.R. at 742-44 (agreeing with Koeller, 170 B.R. 1019); In re Koeller, 170 B.R. at 1023 (citing Service, 155 B.R. at 514; Robertson, 72 B.R. at 4); Stone, 166 B.R. at 623.

District of Ohio overruled an objection to a Chapter 13 plan where the secured creditor objected on the basis that it did not consent to surrender in satisfaction of its claim. Id. at 422-23. In overruling the objection, the court noted that nothing in the Code requires a secured creditor's assent to surrender, id. at 422, and § 1325(a)(5)(C) specifically grants the debtor the option to surrender property where the creditor does *not* consent, id. at 423. Other courts have similarly noted that a secured creditor's consent to surrender is not required by the Bankruptcy Code.[16]

Ultimately, however, the split between these cases lies more in semantics than outcomes. In Service, although the court spoke in terms of the creditor's assenting to the "surrender," it was really focusing on the creditor's *obligations* in light of a debtor's valid surrender. The court did not hold that a debtor could not provide for surrender of property in a Chapter 13 plan without the secured creditor's assent. Rather, the court held that, where a debtor validly provides for a surrender under § 1325(a)(5)(C), the secured creditor could not be compelled to take possession of the property. See Service, 155 B.R. at 514 (creditor "has been given the remedy of receiving its collateral in satisfaction of its secured claim pursuant to § 1325(a)(5)(C). . . . Whether to proceed with its remedies is within the sole discretion of [the creditor].").[17] Similarly, in White, although the creditor's assent to the

---

[16] See, e.g., Assocs. Commercial Corp. v. Rash, 520 U.S. 953, 962 (1997) ("If a secured creditor does not accept a debtor's Chapter 13 plan, the debtor has two options for handling allowed secured claims: surrender the collateral to the creditor, see *§ 1325(a)(5)(C)*; or . . . the cram down option, . . . see *§ 1325(a)(5)(B)*."); First Brandon Nat'l Bankv. Kerwin (In re Kerwin), 996 F.2d 552 (2d Cir. 1993) (under the identical statutory language governing Chapter 12 plans, surrender is an option available to debtor "in structuring a reorganization plan . . . [and] dealing with a secured claim when the creditor refuses to consent to the plan"); In re Harris, 244 B.R. 556, 557 (Bankr. D. Conn. 2000).

[17] In fact, the court noted that since the plan was confirmed, the creditor's claim was treated consistent with the Code, and the creditor had failed to file an unsecured claim, accepting the

14

debtor's treatment of the secured claim by surrender was not required for confirmation, the court also held, similar to the Service court, that it had no authority to direct the *creditor's* action with regard to the collateral.  White, 282 B.R. at 423 ("the Code does not provide for the court or the debtor to direct the means by which the secured creditor deals with the surrendered property").  Thus, although the language differs, the result in these cases is essentially the same: a debtor complies with § 1325(a)(5)(C) by ceding the debtor's rights to possession of property subject to a security interest, but what the creditor then does, or doesn't do, with that property is left to the creditor's discretion under non-bankruptcy law.[18]

The First Circuit Court of Appeals has also stated that, in the usual case, a creditor can treat surrendered property according to its discretion, as long as it acts consistent with its security agreement and non-bankruptcy law.  See Pratt, 462 F.3d at 19.  In Pratt, the Chapter 7 debtors indicated their intent, pursuant to § 521(a)(2), to surrender their car to the secured creditor rather than reaffirm the debt or redeem the vehicle.  After the debtors received their discharge and the case was closed, the creditor refused to take possession of the property.  The debtors were left with an inoperable vehicle that the secured creditor had no interest in taking; but salvage dealers would not take the vehicle because, under applicable Maine law, the creditor would first have to release its lien.  The creditor refused

---

surrendered property was the creditor's *only* remedy and it would receive no other distribution under the debtor's Chapter 13 plan.  Service, 155 B.R. at 515.

[18] See also In re Heflin, 2010 WL 1417776, *1 (Bankr. E.D. Va. April 1, 2010) (where property is surrendered under a plan, the secured creditor "is free to enforce its lien in accordance with applicable non-bankruptcy law"); In re Hughes, 402 B.R. 404 (Bankr. M.D. Fla. 2008) ("The Bankruptcy Code is silent as to the manner in which the holder of an allowed secured claim may dispose of collateral surrendered pursuant to Section 1325(a)(5)(C).  Non-bankruptcy law and the underlying documents control the disposition of surrendered collateral.") (citing In re Kerwin, 996 F.2d at 557).

15

to do so unless the claim was paid in full. Id. at 17.

The First Circuit concluded that the debtors had surrendered the vehicle within the meaning of § 521(a)(2) of the Code by making it available to the secured creditor. Id. at 18-19. Yet the court also held – in keeping with the holdings in Service and White that a creditor can not be forced to take possession of collateral merely because a debtor has surrendered it – that nothing in § 521(a)(2) *required* a secured creditor to accept possession, id., "as such a reading would be at odds with well-established laws that a creditor's decision whether to foreclose on and/or repossess collateral is purely voluntary and discretionary." Id. at 19.

But the First Circuit went further. It reasoned that although the creditor could not be forced to repossess the property, its actions essentially denied the debtors the right to surrender the property. Id. at 20. And since it was clear that the creditor would not foreclose on the collateral, its refusal to release the lien was solely for the purpose of collecting the discharged debt. Thus, the practical effect was to prevent the debtors from effectively surrendering the collateral and coerce them into paying the debt in violation of the discharge injunction. Id. at 20-21. And in that circumstance, the provisions of the Bankruptcy Code preempted the creditor's state law rights. Id. at 19. Accordingly, the First Circuit held that a secured creditor is free to deal with surrendered property in its discretion and in keeping with non-bankruptcy law, but if the creditor's actions have the *practical* effect of preventing relief provided by the Code, those state law rights may be overridden. Id. ("Thus, even legitimate state-law rights exercised in a coercive manner might impinge upon the important federal interest served by the discharge injunction, which is to ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged pre-

16

petition debts.").

Here, however, there is no evidence that American has taken any action creating the "practical effect" of denying rights to which the Debtors are entitled under the Bankruptcy Code. Although American has not objected to the Debtor's Plan, the Plan has not yet been confirmed. More important, relief from the automatic stay has not yet been granted, preventing American from exercising *any* rights with regard to the Property. At this point, American has not said that it *will not* foreclose on the property, only that it will not immediately accept a deed-in-lieu of foreclosure. Consistent with the First Circuit's statements in Pratt, this Court holds that American cannot be compelled to take a deed-in-lieu and is entitled to exercise its options available under the mortgage and Massachusetts state law.

And so, for now, the Court need not deal with the thornier issue of whether, following confirmation of the Plan, American's state-law rights can be altered to give effect to the Debtors' right to surrender the Property under § 1325(a)(2)(C). To the extent the Debtors' Motion seeks an order compelling American to take a particular action with regard to the Property, that request must be denied. The Motion for Relief will be granted to allow American to exercise its rights under the mortgage and non-bankruptcy law. And to the extent that the Debtors ask the Court simply to compel American to "acknowledge" their proposed surrender, that request is moot, since American has not objected to the Plan and has already stated that it has no objection to the Debtors' proposed treatment of its claim.

    C.    **Administrative Claim Reimbursement**

Finally, the Debtors ask the Court to allow them to submit proof of their expenses related to the Property to the Trustee and to deduct those expenses from their Plan

payments. Whatever the validity of the Debtors' argument that these are theoretically § 503 administrative expenses, and regardless of whether the Trustee's objections are sound, the procedure by which the Debtors wish to proceed is inconsistent with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure.

First, if the Debtors' actual expenses vary from those included on Schedule J or in the CMI Calculation, they are obliged to amend the Schedules to accurately reflect their present circumstances. By submitting their requested expenses directly to the Trustee, the creditors are deprived of an opportunity to review accurate schedules and statements of expenses and raise any appropriate objections.

Second, by seeking a deduction of the expenses directly from their Plan payments, the Debtors are essentially asking this Court to permit a modification of the Plan and a reduction of the dividend to unsecured creditors without filing a motion and providing adequate notice to interested parties in contravention of the Federal and Local Bankruptcy Rules. See Fed. R. Bankr. P. 2002(b), 3015(d); Mass. Local Bankr. R. 13-10(b). For these reasons, the request for reimbursement of the expenses must be denied.

IV.     CONCLUSION

The Court finds no authority under Massachusetts law or the Bankruptcy Code to compel American to take immediate title to or possession of the Property proposed to be surrendered pursuant to the Debtors' pre-confirmation Chapter 13 Plan. Nor can the Court sanction the procedure by which the Debtors seek reimbursement of their claimed administrative expenses or deduction of those expenses from their disposable income currently used to fund the Plan. Accordingly, the Debtors' Motion must be denied.

However, in order that American may proceed with its rights under the mortgage and non-bankruptcy law, and in keeping with the Debtors' assent to the lifting of the automatic stay, the Motion for Relief will be granted. Orders in conformity with this memorandum shall issue forthwith.


DATED: July 15, 2010                              By the Court,

*[signature]*

Henry J. Boroff
United States Bankruptcy Judge

_____